**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-cv-01367-STV

ZULAFKAR ALI X,

     Petitioner,

v.

PAMELA BONDI; *et al*,

      Respondents.

---

**ORDER GRANTING APPLICATION FOR WRIT OF HABEAS CORPUS**

---

This matter comes before the Court pursuant to the Order of Reference [#8], entered on April 13, 2026, and the parties' unanimous consent to disposition of this action by a United States Magistrate Judge [#6]. Petitioner Zulafkar Ali X is in the custody of the Aurora Detention Center. [#1 at ¶ 1] On March 31, 2026, Petitioner commenced this action through counsel by filing an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. [*Id.*] The Court has carefully reviewed the filings to date, and the applicable case law, and has determined that oral argument would not materially assist the Court in reaching a disposition. For the following reasons, the Court **GRANTS** the Petition.

**I.     BACKGROUND**

Petitioner Zulafkar Ali X is a 28-year-old native and citizen of India who is currently detained at the Denver Contract Detention Facility in Aurora, Colorado. [#1 at ¶¶ 1, 14] Petitioner has remained continuously detained in immigration custody since September

10, 2024, when he entered the United States and was detained by immigration authorities.  [*Id*. at ¶ 14]  Petitioner alleges that he has no criminal record.  [*Id*.]

Shortly after Petitioner's entry into the United States, the Department of Homeland Security ("DHS") issued a Notice to Appear charging him as removable pursuant to Sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA").  [*Id*. at ¶ 20]  Petitioner alleges that he was charged as a noncitizen present in the United States without being admitted or paroled, rather than as an arriving noncitizen. [*Id*.]  On March 27, 2025, during the course of removal proceedings, Petitioner applied for asylum, withholding of removal, and protection under the Convention Against Torture.  [*Id*. at ¶ 22]  Following merits proceedings, an Immigration Judge granted Petitioner asylum on or about August 13, 2025.  [*Id*. at ¶ 23]  On September 9, 2025, DHS appealed the Immigration Judge's asylum determination to the Board of Immigration Appeals ("BIA"). [*Id*. at ¶ 24]  Because of that appeal, the Immigration Judge's order has not yet become administratively final pursuant to 8 C.F.R. § 1003.39.  [*Id*. at ¶ 25]  Petitioner alleges that he nevertheless remains detained solely because the Government elected to pursue the administrative appeal.  [*Id*. at ¶ 26]

Petitioner further alleges that, throughout the duration of his detention, he has never received an individualized custody or bond hearing at which the Government was required to demonstrate that his continued detention was necessary to prevent flight or danger to the community.  [*Id*. at ¶ 4]  According to the petition, Petitioner has now been detained for more than eighteen months without an opportunity to challenge the necessity of his continued detention.  [*Id*. at ¶ 30]  Petitioner raises four claims challenging his continued detention: (1) violations of procedural due process because he has been

2

detained for over eighteen months without a bond hearing [#1 at ¶¶ 49-59]; (2) violations of substantive due process because his detention allegedly no longer serves a legitimate governmental purpose after an Immigration Judge granted him asylum [*id*. at ¶¶ 60-72]; (3) violations of the INA [*id*. at ¶¶ 73-89]; and (4) violation of the Suspension Clause. [*Id*. at ¶¶ 90-98]   Petitioner seeks an order directing Respondents to either immediately release him or to provide an individualized bond hearing.  [*Id*. at 19]

## II.    LEGAL FRAMEWORK

### A.    Habeas Corpus under 28 U.S.C. § 2241

Section 2241 authorizes courts to adjudicate a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."  *Vizguerra-Ramirez v. Baltazar*, No. 25-cv-00881-NYW, 2025 WL 3653158, at *3 (D. Colo. Dec. 17, 2025) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).  "The writ of habeas corpus is designed to challenge 'the fact or duration' of a person's confinement."  *Ramirez v. Bondi*, No. 25-cv-1002-RMR, 2025 WL 1294919, at *3 (D. Colo. May 5, 2025) (quoting *Preiser*, 411 U.S. at 500).  "[A] noncitizen may bring a habeas petition under this section if his or her confinement violates the Fifth Amendment's guarantee of due process."  *Juarez v. Choate*, No. 1:24-cv-00419-CNS, 2024 WL 1012912, at *3 (D. Colo. Mar. 8, 2024) (citing *Diaz-Ceja v. McAleenan*, No. 19-cv-00824-NYW, 2019 WL 2774211, at *3 (D. Colo. July 2, 2019)).

### B.    Removal Proceedings

The INA governs all aspects of immigration law.  *See* 8 U.S.C. §§ 1101 *et seq*.  In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act

3

("IIRIRA") which substantially amended the INA. *Nken v. Holder*, 556 U.S. 418, 423-25 (2009) (outlining the changes to the statute). Relevant here, IIRIRA added the expedited removal proceedings of Section 1225 as an alternative mechanism for removing noncitizens from the United States alongside the existing Section 1226 and Section 1229a proceedings. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 106-107 (2020)); *see also Aleman Hernandez v. Baltazar*, No. 1:25-cv-3688-SKC-SBP, 2025 WL 3718159, at *2 (D. Colo. Dec. 23, 2025).

"The usual removal process—commonly referred to as Section 240—involves an evidentiary hearing before an immigration judge, where a noncitizen may attempt to show that he or she should not be removed." *Aleman Hernandez*, 2025 WL 3718159, at *2 (quotations omitted). "These are adversarial proceedings where noncitizens have the right to hire counsel, examine the evidence against them, present their own evidence, and cross-examine witnesses." *Id*. (citing 8 U.S.C. § 1229a(b)(4)(A)-(B)). "These proceedings are recorded, often take months to resolve, and upon a decision by an immigration judge, are appealable to the Board of Immigration Appeals." *Id*. (citing 8 C.F.R. §§ 1003.1, 1240.15). "The BIA order is, in turn, appealable to a U.S. Court of Appeals." *Id*. (citing 8 U.S.C. § 1252).

"The second process provides for expedited removal [pursuant to 8 U.S.C. § 1225(b)(1)]. Under this provision, noncitizens who satisfy two criteria may be subject to expedited removal." *Id*. (citing 8 U.S.C. § 1225(b)(1)). "Under the first criterion, the noncitizens are 'inadmissible' to the United States because they either lack proper entry documents or they engaged in fraud or willfully misrepresented a material fact on their application for admission." *Id*. (citing 8 U.S.C. § 1225(b)(1)(A)(i)). "The second criteria

4

provides that the noncitizens fall into at least one of two categories: (1) they are 'arriving in the United States,' 8 U.S.C. § 1225(b)(1)(A)(i) ('Arriving [Noncitizen] Provision'); and or (2) they 'have not been admitted' or paroled into the United States and have 'not affirmatively shown' to an immigration officer's satisfaction that they have been 'physically present in the United States continuously for [a] 2-year period immediately prior to the date of the determination of inadmissibility[,]' *id*. § 1225(b)(1)(A)(iii)(II) ('Designation Provision')." *Id*. "In contrast to the usual removal process, 'the expedited removal order is usually issued within a few days, if not hours.'" *Id*. (quoting *Make the Rd. New York v. Noem*, No. 25-cv-190 (JMC), 2025 WL 2494908, at *3 (D.D.C. Aug. 29, 2025)). "In these proceedings, noncitizens typically have no opportunity to review the evidence against them or prepare a defense." *Id*. (citing 8 U.S.C. § 1225(b)(1)(B)(iii)(IV); 8 C.F.R. § 235.3(b)(2)(iii)). "And there is almost no opportunity for judicial review." *Id*. (citing 8 U.S.C. § 1252(a)(2)(A)).

### C.    Detention Pending Removal

The INA provides two options for detaining noncitizens pending removal proceedings. *Id*. First, Section 1225 authorizes the government to inspect, detain, and, if appropriate, remove applicants for admission. *Id*. (citing 8 U.S.C. § 1225). "Section 1225(b) requires the detention of two groups of 'applicants for admission.'" *Id.* (citing 8 U.S.C. § 1225(b)(1), (2)). "To the first grouping, § 1225(b)(1) . . . applies to noncitizens who (1) are inadmissible because they lack proper documentation or because they engaged in fraud or willful misrepresentations in their applications, *and* (2) fall within the 'Arriving [Noncitizen] Provision' or the 'Designation Provision.'" *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(i), (iii)(II)). "To the second grouping, § 1225(b)(2) applies 'in the case of [a

5

noncitizen] who is an applicant for admission, [where] the examining immigration officer determines that [the noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted.'" *Id.* (citing 8 U.S.C. § 1225(b)(2)(A)).  "Noncitizens detained under § 1225, no matter which grouping, are not entitled to bond hearings."  *Id.* (citing *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018)).

Second, Section 1226 authorizes the arrest and detention of noncitizens "pending the outcome of removal proceedings."  *Id.* at *3 (quoting *Jennings*, 583 U.S. at 289).  Unlike Section 1225(b), Section 1226 generally provides for individualized custody determinations, including the possibility of release on bond (except where mandatory detention under Section 1226(c) applies).

### III.    ANALYSIS

#### A.    Section 1225 Statutory Claim

Petitioner first argues that Section 1225(b)(2) does not authorize his continued detention following the Immigration Judge's grant of asylum.  [#1 at ¶ 75]  The Court disagrees.  In *Jennings*, the Supreme Court rejected the argument that Section 1225(b) should be construed to contain an implicit six-month limitation or periodic bond-hearing requirement.  583 U.S. at 297-306.  The Court explained that the statute requires detention of covered noncitizens until their proceedings conclude and does not itself provide for bond hearings.  *Id*.  Accordingly, Petitioner's argument that the INA independently entitles him to a bond hearing cannot be reconciled with *Jennings*.  To the extent Petitioner asserts that the statute itself requires individualized custody review after a particular period of detention, that claim fails as a matter of law.

### B.    Due Process Claims

While *Jennings* forecloses Petitioner's statutory argument, it does not foreclose his due process claims.  The Supreme Court has repeatedly recognized that immigration detention is constitutionally permissible because it serves regulatory rather than punitive purposes.  *See Demore v. Kim*, 538 U.S. 510, 531 (2003).  As another court in this District has recognized, however, "courts have 'sharply disagree[d] about the reach of the Due Process Clause as applied to arriving [noncitizens].'"  *Nieto v. Ceja*, No. 1:24-cv-02821-DDD-NRN, 2025 WL 4087626, at *6 (D. Colo. June 12, 2025) (quoting *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D.N.M. 2020).  "Some courts have held that, at some point, due process requires a noncitizen subject to prolonged detention under Section 1225(b) be given an individualized bond hearing before an immigration judge, or some other form of individualized review of eligibility for release beyond the opportunity to request discretionary parole under Section 1182(d)(5)."  *Id*. (collecting cases).  "But other courts have held that due process imposes no time limit or hearing requirement while [a noncitizen] is detained pending removal proceedings." *Id*. (citations omitted).

This Court agrees with those courts that have concluded that the Due Process Clause applies to noncitizens detained pursuant to Section 1225(b).  *See*, *e.g.*, *Mbalivoto v. Holt*, 527 F. Supp. 3d 838, 847-50 & n.2 (E.D. Va. 2020) (collecting cases).  The Supreme Court has recognized "explicitly in [*Zadyvdas v. Davis*, 533 U.S. 678, 701 (2001)] and implicitly in dicta in *Demore*, that at some point immigration detention becomes unreasonable and therefore unconstitutional."  *Mbalivoto*, 527 F. Supp. 3d at 847.  "Under § 1231(a)(6), that period was presumptively after six months; and under § 1226(c) that time appears to be a point substantially beyond the time period necessary to

effect removal." *Id.* at 847-48 (quotation omitted). And while neither *Zadyvdas* nor *Demore* dealt with the due process right of an entering noncitizen such as Petitioner, the distinction between arriving noncitizens (subject to detention under Section 1225) and those noncitizens entitled to an individualized bond hearing becomes quickly suspect under the circumstances here—an Immigration Judge has already decided that Petitioner is entitled to asylum and thus that he may remain in the country. *Id.* at 849 ("These disparities in treatment [between Section 1225 and 1226] become even more difficult to justify based on the facts of this case where, unlike many [noncitizens] held under § 1226(a) or (c), Petitioner has not engaged in any conduct while in the United States that makes him inadmissible; and, after 22 months, an Immigration Judge has determined Petitioner is entitled to asylum or, in the alternative, deferral of removal under CAT and his lawful presence in the United States appears to be a realistic, if not probable outcome.").

Even so, Respondents contend that Supreme Court precedent forecloses Petitioner's due process claims. [#9 at 3-5] It is true that the Supreme Court has long recognized Congress's substantial authority over the admission and exclusion of noncitizens. Decades before *Zadyvdas* and *Demore*, the Supreme Court held that "[w]hatever the procedure authorized by Congress is, it is due process as far as [a noncitizen] denied entry is concerned." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950). More recently, the Court reaffirmed that principle in rejecting a challenge to the procedures governing admission and expedited removal proceedings. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138-39 (2020) ("[M]ore than a century of [Supreme Court] precedent [has held that] foreigners who have never been

8

naturalized, nor acquired any domicil or residence within the United States, nor even been admitted into the country pursuant to law, the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law." (quotation omitted)).

But the Court does not read those decisions as broadly as Respondents urge. *Knauff* and *Thuraissigiam* addressed the constitutional adequacy of the procedures governing admission and exclusion, not the constitutionality of prolonged physical detention. *See Knauff*, 338 U.S. at 544 (addressing due process in the context of exclusion from admission); *Thuraissigiam*, 591 U.S. at 138-40 (addressing the constitutionality of expedited removal procedures). And this is an important distinction. The question here is not whether Petitioner should be allowed into the country—an Immigration Judge has already made that decision. Rather, the question is whether Petitioner should be detained indefinitely, without any individualized bond hearing, while the government appeals that Immigration Judge's decision. If a noncitizen with "a long criminal record, involving drug crimes, attempted robbery, attempted burglary, and theft," as well as a "history of flight, from both criminal and deportation proceedings," cannot be detained indefinitely without creating a "serious constitutional problem," *Zadyvdas*, 533 U.S. at 684, 692, the Court fails to see how detaining Petitioner—who has no criminal record, no history of flight, and who an Immigration Judge has determined should be granted asylum—for more than 21 months with no definite end in sight does not create an even more serious constitutional problem. Thus, the Court now joins the growing number of courts that have concluded that *Knauff* and *Thuraissigiam* do not control due process challenges to continued immigration detention. *See, e.g., A.A. v. Warden*, No.

4:24-cv-191-CDL-AGH, 2026 WL 1105047, at *5 (N.D. Ga. Feb. 13, 2026); *Sadeqi v. LaRose*, 809 F. Supp. 3d 1090, 1093 (S.D. Cal. 2025) (collecting cases); *A.L. v. Oddo*, 761 F. Supp. 3d 822, 825 (W.D. Pa. 2025); *Fils-Aime v. FCI Berlin, Warden*, 808 F. Supp. 3d 218, 223-24 (D.N.H. 2025) (collecting cases).  Because the Supreme Court has expressly addressed only the procedures governing *admission,* not whether due process permits prolonged physical detention, the Court declines to extend *Knauff* and *Thuraissigiam* to the materially different circumstances presented here.

Respondents also rely on another case before this Court, which in turn relied on the related Tenth Circuit decision in *Sierra v. Immigration & Natural Service (INS)*.  [#9 at 5 (citing *Espinoza v. Ceja*, No. 25-cv-01120-GPG, Dkt. No. 11, at 15-17)]  The *Espinoza* court concluded that *Thuraissigiam* and the Tenth Circuit decision in *Sierra v. INS*, 258 F.3d 1213 (10th Cir. 2001), compelled the conclusion that applicants for admission are only entitled to the process Congress has conferred upon them.  *Espinoza*, No. 25-cv-01120-GPG, Dkt. No. 11, at 15-17.  The Court respectfully disagrees.  As explained above, *Thuraissigiam* did not address the question of whether applicants for admission could be detained indefinitely without the right to an individualized bond hearing.  Nor did the Tenth Circuit's decision in *Sierra*.  There, the Tenth Circuit rejected a constitutional challenge brought by an inadmissible noncitizen seeking release through immigration parole after that parole had been revoked following criminal convictions.  *Sierra*, 258 F.3d at 1215-18 ("The Due Process Clause does not provide [petitioner] a liberty interest in being released on parole.").  As another court within this Circuit has observed, *Sierra*'s holding is properly understood as addressing whether an arriving noncitizen possesses a constitutional liberty interest in parole itself.  *See Mendivaev v. Lyons*, No. 1:25-cv-

10

01308-DHU-GBW, 2026 WL 917457, at *5 (D.N.M. Apr. 4, 2026). And as in *Mendivaev*, Petitioner here is not claiming a constitutional right to parole or any other immigration status, but instead asserts a due process liberty interest in freedom from continued physical detention without any individualized determination that continued confinement is necessary to ensure his appearance at future proceedings or to protect the community. *Id*. Thus, *Sierra* does not control the outcome in this case.

That distinction is significant. A claim to admission or parole implicates Congress's plenary authority over the Nation's borders. *See Thuraissigiam*, 591 U.S. at 138-40; *Sierra,* 258 F.3d at 1218-19. A claim challenging prolonged physical confinement, by contrast, implicates one of the most fundamental liberty interests protected by the Due Process Clause. *See Zadyvdas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Accordingly, the Court concludes that Petitioner's due process claims are not foreclosed by *Knauff*, *Thuraissigiam*, or *Sierra*.

Next, the Court must determine whether Petitioner's continued detention has become constitutionally unreasonable. Courts in this district have concluded that the six-factor test set forth in *Singh v. Choate*, No. 19-cv-00909-KLM, 2019 WL 3943960, at *5 (D. Colo. Aug. 21, 2019), provides a sufficient framework for assessing such a question. *See*, *e.g., Vizguerra-Ramirez v. Baltazar*, No. 25-cv-00881-NYW, 2025 WL 3653158, at *8-11 (D. Colo. Dec. 17, 2025) (collecting cases). Those factors are: (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in

the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal. *Singh*, 2019 WL 3943960, at *5. The Court addresses each factor in turn.

First, Petitioner has remained continuously detained since September 10, 2024—a period exceeding 21 months. [#1 at ¶ 30] This length of detention is sufficient to support a finding that Petitioner's detention has become unreasonably prolonged. *See Vizguerra-Ramirez*, 2025 WL 3653158, at *11 (finding detention of approximately nine months caused the first *Singh* factor to weigh in favor of the petitioner); *Viruel Arias v. Choate*, No. 22-cv-2238, 2022 WL 4467245, at *2 (D. Colo. Sept. 26, 2022) (finding prolonged detention unconstitutional after approximately 15 months and applying the *Singh* factors). Accordingly, the duration of Petitioner's detention weighs heavily in favor of finding it prolonged.

Second, there is no indication that Petitioner's detention will conclude in the near future. "Courts examine the anticipated duration of all removal proceedings—including administrative and judicial appeals—when estimating how long detention will last." *Vizguerra-Ramirez*, 2025 WL 3653158, at *11 (quotation omitted). Although DHS's appeal remains pending before the Board of Immigration Appeals, no decision has yet been issued. Thus, Petitioner's detention may continue for a substantial and presently indeterminate period, and this factor weighs in Petitioner's favor.

The third factor requires the Court to consider whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention. *Id*. at *12. Although immigration detention is civil in nature, Petitioner remains confined in a secure detention facility and is subject to significant restraints on his liberty.

Thus, it is akin to criminal incarceration.  *Id*. (collecting cases).  The conditions of confinement therefore weigh in favor of finding Petitioner's detention sufficiently prolonged to trigger due process concerns.

As to the fourth and fifth factors, the record does not indicate that Petitioner has done anything to prolong these proceedings.  Petitioner's pursuit of asylum and defense against removal do not constitute unreasonable delay and were exercised as rights afforded to him under the immigration laws.  Rather, the current delay is attributable largely to the government.  An Immigration Judge granted Petitioner asylum on August 13, 2025.  [#1 at ¶ 23]  Petitioner's continued detention now exists solely because DHS elected to appeal that favorable determination.  Unlike cases in which prolonged detention results from a detainee's repeated requests for continuances or appellate review, the principal source of delay here is the government's own litigation decision.  Therefore, the fourth factor is neutral, and the fifth factor weighs in favor of Petitioner.

Finally, the likelihood of a final order of removal is uncertain.  An Immigration Judge has already determined, following merits proceedings, that Petitioner qualifies for asylum.  Although DHS may ultimately prevail on appeal, Petitioner presently possesses a favorable ruling from an Immigration Judge, and no final order of removal exists.  *See Juarez v. Choate*, No. 1:24-cv-00419-CNS, 2024 WL 1012912, at *7 (D. Colo. Mar. 8, 2024) (finding the sixth factor weighed in petitioner's favor where her "most recent BIA appeal concluded in her favor").  As a result, removal is not presently executable and

remains contingent on the outcome of the Government's appeal and this factor favors Petitioner.

Accordingly, the Court concludes that Petitioner's detention has become constitutionally unreasonable and continued detention without any individualized custody determination violates procedural due process. The appropriate remedy is not immediate release, but a prompt bond hearing before an Immigration Judge at which the Government bears the burden of demonstrating by clear and convincing evidence that continued detention is necessary because Petitioner presents a flight risk or a danger to the community.

## IV. Conclusion

As the United States prepares to celebrate its 250th anniversary, the Court notes that the demarcation of the rights of noncitizens in this country has not always been clear. Indeed, nearly fifty years ago the Supreme Court noted:

> [D]ecisions of this Court with regard to the rights of [noncitizens] living in our society have reflected fine, and often difficult, questions of values. As a Nation, we exhibit extraordinary hospitality to those who come to our country, which is not surprising for we have often been described as "a nation of immigrants."

*Foley v. Connelie*, 435 U.S. 291, 294 (1978). Fifty years later, it is difficult to reconcile the rights acknowledged by *Zadyvdas* with certain statements from *Knauff* and *Thuraissigiam*. This Court has done its best to do so. If the Court is wrong, let another court declare that a noncitizen with no criminal history, no history of flight, and an adjudicated right to asylum may be detained indefinitely without running afoul of the Due Process Clause.

14

For the foregoing reasons, it is **ORDERED**:

(1) that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [#1] is **GRANTED** to the extent it seeks a bond hearing;[1]

(2) Respondents shall provide Petitioner with a bond hearing in which the Government bears the burden of proof by clear and convincing evidence under 8 U.S.C. § 1226(a) within **SEVEN DAYS** of the date of this Court's Order; and

(3) Respondents shall file a status report within **TEN DAYS** of the date of this Court's order to certify compliance.  The status report shall include if and when the bond hearing occurred, if bond was granted or denied, and if bond was denied, the reasons for the denial.

DATED: June 29, 2026                              BY THE COURT:

                                                  s/Scott T. Varholak
                                                  Chief United States Magistrate Judge

---

[1] To the extent Petitioner seeks an award of attorney's fees, she may file a separate motion for fees that complies with the Federal Rules of Civil Procedure and the Local Rules of Practice for this District.